IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Lafayette Cobin, d/b/a Specialty Care Nursing, Inc., | ) <br> ) <br> ) C/A No. 2:04-23251-18 |
| Plaintiff, | ) <br> ) |
| vs. | ) <br> ) **ORDER** and **OPINION** |
| Julia Adams, Delores Reynolds, Mary Ann, Martin, and Nancy Davidson in their official capacities and Medical University Hospital Authority, | ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

## I.     Background

Defendant Medical University Hospital Authority ("MUHA") operates a state-owned hospital facility. The hospital operates around the clock and must be staffed at all times with healthcare professionals, including nurses. To ensure that it has enough staff, MUHA contracts with various medical staffing agencies to provide temporary nurses to fill shifts on an as-needed basis. The staffing agencies provide qualified professional nursing staff members to fill vacancies in the hospital staff, either per diem (by the day, for when a scheduled nurse is absent) or on a traveling basis (for an extended period of time, but not as a permanent staff member). When MUHA has a vacancy that needs to be filled, it notifies various staffing agencies that it has contracted with. The staffing contracts do not guarantee any agency that a certain number of jobs or shifts will be available; they merely give the various staffing agencies eligibility to bid on vacant positions and to supply staff for the vacant positions.

Plaintiff Lafayette Cobin owns and operates Specialty Care Nursing, Inc., which is a staffing agency as described above. On or about October 29, 2001, plaintiff entered into agreements with MUHA to provide both per diem and travel nurse staffing. During the relevant period, MUHA had similar agreements with approximately 34 different staffing agencies, ranging in size from national organizations with full time administrative staff and hundreds of nurses to smaller agencies such as plaintiff's.

While plaintiff's agency did fairly well soon after the arrangement started, she alleges that her agency was being overlooked for contracts and per diem work in favor of other agencies. Plaintiff made a complaint to MUHA that she was having difficulty getting per diem shifts or travel contracts for her nurses. Plaintiff's complaints mainly had to do with certain aspects of the staffing process. She was placed on a minority vendor list so that the hospital might take more notice and do more business with her.

In 2002, MUHA started doing business with an association called the South Carolina Hospital Association ("SCHA"). Staffing agencies and hospitals paid to be a part of the association, which acted as a "middle-man" between the hospitals and the staffing agencies. In order to have the privileges associated with SCHA, a staffing agency had to both be accepted by the association and pay a premium.

While plaintiff alleges that her staffing agency met the objective qualifications in the years 2003-2004 and 2004-2005, she was not accepted by SCHA as a member. Plaintiff alleges that MUHA's decision to use SCHA staffing agencies over any other agency effectively kept plaintiff from being able to offer any of the nurses who went

through her agency the ability to obtain travel nurse contracts, as SCHA was able to adequately supply MUHA's needs for such staffing.

In March of 2004, plaintiff complained to Dr. Slaughter, an employee of MUHA, that things had not gotten any better for her. She made an allegation relating to race, and Dr. Slaughter referred the matter to Mr. Bonaparte, Director of the Equal Employment Opportunity and Affirmative Action Office at MUHA.[1] MUHA requested that plaintiff formally put her complaint in writing. Instead of formally complaining in writing, plaintiff retained a lawyer. In July of 2004, plaintiff and her counsel had a meeting with MUHA officials to discuss her various complaints. MUHA attempted to resolve her issues, but plaintiff remained dissatisfied. She filed this suit on December 13, 2004. Plaintiff initially sought relief from individual defendant employees of MUHA under 42 U.S.C. § 1983 as well as for interference with contractual relations. She sought relief from defendant MUHA under 42 U.S.C. § 1981 and for breach of contract. However, in her response to defendants' summary judgment motion, plaintiff has conceded her claims against the individual defendants as well as her § 1981 claim against MUHA. The sole remaining claim is the state law breach of contract claim against MUHA.

**II.     Analysis**

Plaintiff has conceded that MUHA, as an agency of the State of South Carolina, is not subject to suit under 42 U.S.C. §§ 1981 and 1983, leaving only the breach of contract action against MUHA. (Pl.'s Resp. 1.) Pursuant to 28 U.S.C. § 1367(a), this court has

---

[1] Mr. Bonaparte was incorrectly identified in plaintiff's Response as "the president of Affirmative Action for MUHA." (Pl.'s Resp. 4.)

supplemental jurisdiction over the state law breach of contract action.[2] However, § 1367(c) limits this grant of supplemental jurisdiction by stating that "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Pursuant to § 1367(c)(3), this court has discretion over whether to retain or dismiss the supplemental state claim. See Kendall v. City of Chesapeake, 174 F.3d 437, 444 (4th Cir. 1999) (dismissal of the only federal cause of action gave the district court discretion to decline to exercise supplemental jurisdiction over the remaining state law claim).

The Fourth Circuit has stated:

"Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."

In re Conklin, 946 F.2d 306, 322 (4th Cir. 1991) (quoting United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966)); see Bellamy v. Borders, 727 F. Supp. 247, 252 (D.S.C. 1989) (dismissal of pendent claims is the recommended procedure where the

---

[1] 28 U.S.C. § 1367(a) provides:

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

4

federal claim is disposed of prior to trial). Because plaintiff's federal claims are dismissed at this early stage, before trial, it is within this court's sound discretion to dismiss the state law claim without prejudice.

### III.     Conclusion

For the reasons set forth above, it is therefore **ORDERED** that defendants' motion for summary judgment as to the interference with contract claim and the §1983 claim against the individual defendants and the § 1981 claim against MUHA is **GRANTED** and those causes of action are dismissed, with prejudice. The court declines to exercise supplemental jurisdiction over the state-law breach of contract claim, which is dismissed without prejudice.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**March 2, 2006
Charleston, South Carolina**

5